

# The Attorney General of Texas

MARK WHITE
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso. TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston. TX. 77002-6986
713/650-0666

806 Broadway. Suite 312
Lubbock. TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio. TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

March 18, 1982

Honorable Chet Brooks, Chairman
Senate Committee on Human Resources
Texas State Senate
Room 412, Archives Building
Austin, Texas    78711

Opinion No.    MW-455

Re:    Definition    of    health
maintenance organization

Dear Senator Brooks:

You ask whether a prepaid, single service health care plan that provides services but does not provide reimbursement for services offered by other health care providers would fall within the statutory definition of a health maintenance organization (hereinafter HMO). Before answering your question, we must first note that the definition of an HMO and the requirements for obtaining a certificate of authority to operate an HMO do not distinguish between a "single service" health care plan and a "multiservice" one. Thus, whether a health care plan is to be considered an HMO depends on whether it falls within the statutory definition of an HMO, not on whether it is a single or multiservice plan. Likewise, whether a health care plan that has been determined to be an HMO may obtain a certificate of authority to operate legally as an HMO depends on whether it meets the statutory standards for obtaining a certificate, not on whether it is a single or multiservice health care plan.

Every health care plan that falls within the definition of an HMO must obtain a certificate of authority to operate in this state, according to the Texas Health Maintenance Organization Act, codified in article 20A.03(a) of the Texas Insurance Code. However, in order to qualify to receive a certificate of authority, article 20A.05(b)(2)(B) requires that the health care plan constitute an appropriate mechanism whereby the HMO will effectively provide or arrange for the provision of _basic_ health care services on a prepaid basis. If the health care plan does not provide basic services, then it may not obtain a certificate of authority and thus may not operate in a manner that brings it within the definition of an HMO.

The determination of whether a health care plan may obtain a certificate of authority is not based on whether the plan is a single or multiservice one, but rather on whether it will provide "basic health care services." This phrase is defined in article 20A.02(a) as follows:

health care services which an enrolled population might reasonably require in order to be maintained in good health, including, as a minimum, emergency care, inpatient hospital and medical services, and outpatient medical services.

The definition of basic health care services does not expressly exclude a so-called single service plan. If the operators of such a plan apply to the commissioner of insurance for a certificate of authority, the commissioner must determine whether the plan will offer basic health care services. Because of the lack of a definition for and the ambiguity surrounding the term "single service plan," it is impossible to state in advance that no so-called single service plan can ever qualify for a certificate of authority. Rather, the commissioner must evaluate each health care plan that is required to obtain a certificate and that attempts to do so on the basis of the services it will offer. If those services are found to be sufficient to qualify as basic health care services, the plan may obtain a certificate of authority, without regard to whether it has arbitrarily and artificially been labelled as either a single or multiservice plan.

From the preceding analysis, there arises your question of what type of health plan or organization must attempt to obtain a certificate of authority and then must cease to operate if it cannot qualify for the certificate. Again, this question cannot be answered by reference to the "single service" and "multiservice" labels. Rather, one must refer to the definitions in the Health Maintenance Organization Act to determine the scope of the act's registration requirements. By referring to the definitions, one must conclude that the act intends to prevent certain entities from operating in this state; those entities whose operations are intended to be prevented are health care plans that have the characteristics of an HMO, except that they do not offer basic health care services and therefore cannot qualify for a certificate of authority to operate legally as an HMO.

The statutory definition of an HMO is broad enough to cover health care plans that either may or may not be able to obtain a certificate of authority, just as, for example, the statutory definition of the business of insurance is broad enough to cover companies that may or may not be authorized to engage in the business of insurance. That is, a plan may be included in the definition of an HMO because it offers a prepaid health care service, but it may not exist as a certifiable HMO because it does not offer basic health care services. According to article 20A.02(j) of the Insurance Code, as amended by House Bill No. 1774, Acts 1981, Sixty-seventh Legislature, chapter 562, section 1, at 2299, an HMO is "any person who arranges for or provides a health care plan to enrollees on a prepaid basis." This statute does not require that a plan must offer basic health care

services in order to be included in the definition of an HMO; the requirement of offering basic services is in the statutory provision that regulates which plans, of the many that fall within the definition of an HMO, can be certified to operate as an HMO.

Whether a plan is considered to be an HMO depends on whether it falls within the statutory definition of "health care plan." Article 20A.02(h) of the Texas Insurance Code, defines a health care plan as follows:

> any plan whereby any person undertakes to provide,
> arrange for, pay for, or reimburse any part of the
> cost of any health care services; provided,
> however, a part of such plan consists of arranging
> for or the provision of health care services, as
> distinguished from indemnification against the
> cost of such service, on a prepaid basis through
> insurance or otherwise.

This definition of health care plan does not distinguish between a multiservice and a single service plan. It refers to the provision of "health care services," defined in article 20A.02(1) of the Insurance Code as "any services, including the furnishing to any individual of medical or dental care." Thus, a plan that provides any health care service (such as dental care) on a prepaid basis constitutes a health care plan and consequently would fall within the statutory definition of an HMO. The plan need not offer all health care services to be considered a health care plan and an HMO. If it offers any prepaid health care service, the plan may be considered an HMO for regulatory purposes. However, to become a certified HMO, it must of course offer basic health care services.

Although the definition of a health care plan in article 20A.02(h) of the Insurance Code was amended by House Bill No. 1774, the changes did not in any way exempt a so-called single service plan from the definition of a health care plan or of an HMO. In fact, the legislative history of House Bill No. 1774 indicates that the legislature intended to continue to include single service plans in the definitions of a health care plan and of an HMO. As originally filed, House Bill No. 1774 would have added language to the definition of health care services to make clear that such services did not include prepaid single services. Such language was omitted in the final version of the bill. The legislature's refusal to adopt the proposed exemption of single service plans indicates that it intended to continue to include single service plans as health care plans that are subject to regulations applying to HMO's.

Your opinion request suggests that the definition of a health care plan could be interpreted to include only those plans that

provide both services and reimbursement for services. Under such an interpretation, a plan (either single or multiservice) could not be considered an HMO if it only <u>provided</u> services but did not also <u>reimburse</u> for services. It is the position of this office that such an interpretation of the definition of a health care plan would be incorrect. Article 20A.02(h) of the Insurance Code expressly states that a plan whereby a person provides health care services <u>or</u> reimburses the costs of such services is a health care plan. The remainder of the definition of health care plan simply makes clear that indemnification against the cost of such services will not by itself cause the plan to be considered a health care plan, because indemnification alone would constitute a traditional "insurance" plan. There must be some arranging for or provision of services to bring the plan within the definition of health care plan.

The statutory provision relating to the provision of and reimbursement for services merely serves to distinguish a health care plan from indemnification. It does <u>not</u> serve to exempt a plan that provides services alone from the definition of a health care plan. Although the definition does not include a pure indemnification plan, it still <u>does</u> include a plan that provides services only, without any reimbursement feature. Of course, the definition also includes a plan that both provides and reimburses for services.

When a prepaid health service plan, either "single" or "multiservice" and either simply providing or both providing and reimbursing for services, falls within the definitions of an HMO and a health care plan, the State Board of Insurance has the authority to regulate such a plan under the statutory provisions applying to HMO's. If the plan offers basic health care services, it can receive a certificate of authority to operate legally as an HMO. If it does not propose to offer basic health care services, it cannot receive a certificate and cannot legally operate as an HMO in the state of Texas. Furthermore, although legally authorized HMO's are exempt from many of the statutes regulating insurance companies, unauthorized HMO's are not similarly exempt. Thus, plans falling within the definition of an HMO but operating without a certificate of authority would be subject to the insurance statutes.

Several attorney general opinions have addressed the issue of whether prepaid medical plans constitute insurance plans. The earliest one, Attorney General Opinion O-4986-A (1943), concluded that a non-profit health service, which did not <u>guarantee</u> that services would be provided, was not engaged in the insurance business. Later, Attorney General Opinion WW-1475 (1962) declared that a prepaid insurance plan would be an insurance business. This opinion identified the risk element of the plan as a primary reason for finding it to be insurance. It also made clear that whether a plan is labelled as insurance depends on the details of the plan.

More recently, Attorney General Opinion H-344 (1974) concluded that certain proposed prepaid health plans could not be regulated by the State Board of Insurance, because no authorization existed in the Insurance Code at that time for the regulation of health maintenance organizations. We interpret this conclusion to mean that before the HMO Act was passed in 1975, the board had no statutory authority to create regulatory guidelines of the type eventually embodied in the act passed by the Texas Legislature. However, this opinion did recognize that certain plans could fall within the scope of regulation provided by some sections of the Insurance Code, such as those regulating the provision of life, accident, health or casualty insurance.

The State Board of Insurance has statutory authority to regulate health care plans that are operating as duly authorized and licensed insurance businesses. However, the board does not have the power to exert regulatory control over plans that can be described as insurance but that have not complied with the authorization and licensing statutes for insurance businesses. In the case of unauthorized insurance businesses, rather than regulating the businesses, the board is authorized to identify the health plans as insurance businesses and report to the attorney general that the plans are operating in violation of the law by virtue of engaging in the unauthorized business of insurance. See Ins. Code art. 1.10(8). Such was the situation discussed in Attorney General Opinion O-4217 (1941), in which an undertaking business operating an ambulance service was deemed to be engaging in the unauthorized business of insurance. Although the Board of Insurance Commissioners itself could not take any prohibitory action against the company, it could report the violation to the attorney general, who could then pursue the appropriate legal sanctions.

A prepaid single service health plan could be deemed to be an insurance plan under the criteria established in Attorney General Opinion O-4217 (1941). That opinion stated that because members of the plan would receive benefits in the form of valued services upon the happening of certain contingencies, which constituted the risk assumed by the contractor, the plan amounted to the "doing of an insurance business." Attorney General Opinion WW-1475 (1962) also identified the risk-distribution function of prepaid prescription plans as a major reason for designating the plans as insurance. Thus, depending on the details of the plan, a prepaid single service health plan that does not qualify for an HMO certificate of authority could nevertheless be deemed to be an insurance business. The State Board of Insurance would have the authority to regulate the plan as such if it became a duly authorized insurance business, or the board could take appropriate steps to prevent its operation if the business did not comply with the laws regulating the insurance industry in the state of Texas.

## S U M M A R Y

A prepaid health service plan falls within the statutory definition of a health maintenance organization, whether it offers one or more services and whether it offers services only or a combination of services and reimbursement. However, such a plan cannot obtain a certificate of authority and legally operate as an HMO if it does not offer basic health care services. If such a plan is operating without a certificate of authority, the State Board of Insurance can take steps to prevent its operation as an unauthorized HMO. Also, the board may find that a particular plan constitutes the business of insurance, and the board may pursue the appropriate legal action to prevent the plan from operating in the state of Texas if the plan has not been authorized and is not qualified to engage in the business of insurance.

Very truly yours,

M A R K    W H I T E
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Charmaine Rhodes
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Patricia Hinojosa
Jim Moellinger
Charmaine Rhodes